UNITED STATES OF AMERICA
IN THE COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AFFORDABLE METAL LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 25-160 T |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**COMPLAINT**

NOW COMES Plaintiff, Affordable Metal LLC ("Plaintiff"), by and through its attorney, Timothy R. West, and files its Complaint against Defendant, United States of America ("Defendant"), alleging as follows:

Parties

1. Plaintiff is a Michigan limited liability company with its principal place of business and registered agent in Hastings, Michigan. Further, Plaintiff's sole member is a citizen of Michigan, making Plaintiff a citizen of Michigan.

2. Defendant is the United States of America, acting through its agency, the Internal Revenue Service ("IRS").

3. The Plaintiff has not begun any other lawsuits in state or federal court dealing with the same or similar facts as this action.

4. A statement required under R.C.F.C. 9(m)(2)(B) is attached hereto as **Exhibit A**.

## Jurisdiction and Venue

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1491.

## Legal Background

6. Plaintiff is claiming a refund of form 941 employment taxes and refundable tax credits related to the Employee Retention Credit.

7. Employers are required by law to withhold federal income taxes and Federal Insurance Contributions Act ("FICA") taxes from their employees' wages, remit these withholdings, and report them to the IRS on tax form 941. 26 U.S.C. §§ 3102, 3111.

8. Employers are usually obligated to file IRS form 941 on a quarterly basis with the IRS. 26 U.S.C. § 6011; 26 C.F.R. § 31.6071(a)-1.

## The Employee Retention Credit

9. In response to the Coronavirus Pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. 116-136 (Mar. 27, 2020). Section 2301 of the CARES Act provided a refundable tax credit called the Employee Retention Credit ("ERC") to eligible employers on qualified wages paid to their employees. Pub. L. 116-136, § 2301. The ERC program was amended and extended under the Consolidated Appropriations Act of 2021, Pub. L. 116-260, § 206 (Dec. 27, 2020), and the American Rescue Plan Act of 2021, Pub. L. 117-2, § 3134 (Mar. 11, 2021), and terminated under the Infrastructure, Investment and Jobs Act, Pub. L. 117-58, § 80604, (Nov. 15, 2021). *See also* 26 U.S.C. § 3134.

10. A business that is an eligible employer that pays qualified wages after March 12, 2020, and through December 31, 2021, is entitled to claim the Employee Retention

Credit against its federal employment taxes on the applicable form 941 tax return for that quarter.

11.   Section 2301(b)(3) of the CARES Act states that if the amount of the credit exceeds the amount of federal employment taxes for any applicable quarter, then the excess is treated as an overpayment and refunded to the employer.

<u>General Qualifying Requirements</u>

1) <u>Threshold Requirements</u>

12.   An eligible employer is one that is defined as carrying on a trade or business during calendar years 2020 and 2021 and, with respect to any calendar quarter for which the business experienced one of the following:

    a. Its operations were fully or partially suspended due to orders issued by a governing authority in response to COVID-19 ("Full or Partial Suspension Test") that limited commerce, travel, or group meetings or,

    b. The business experienced a significant decline in gross receipts ("The Gross Receipts Test") for any calendar quarter of 2020 and/or 2021 compared to the corresponding quarter of 2019.  26 U.S.C. § 3134(c)(2).

<u>II) Qualified Wages</u>

13.   If an eligible employer had not more than 100 average full-time employees in 2019, wages that were paid to an employee during quarters in 2020 constituted qualified wages.  Pub. L. 116-136, § 2301(c)(3).

14. If an eligible employer had not more than 500 average full-time employees in 2019, wages that were paid to an employee during the quarters in 2021 constituted qualified wages. 26 U.S.C. § 3134(c)(3).

### III) Calculation of Credit

15. For 2020, the employee retention credit is limited to 50% of qualified wages that an eligible employer pays to an employee in a calendar quarter. Pub. L. 116-136, § 2301(a). The maximum amount of qualified wages that the credit can be claimed against is $10,000 per employee for the entire calendar year of 2020. § 2301(b)(1).

16. For 2021, the employee retention credit is limited to 70% of qualified wages that an eligible employer pays in a calendar quarter. 26 U.S.C. § 3431(a). The maximum amount of qualified wages that the credit can be claimed against is $10,000 per employee per quarter in 2021. 26 U.S.C. § 3134(b)(1).

### Factual Background

17. Plaintiff operated a metal roofing business located in Hastings, Michigan during 2019, 2020 and 2021.

18. Plaintiff had less than 100 full-time employees during the 2019 calendar year.

19. While Plaintiff applied for and received loan forgiveness under the Paycheck Program, the Plaintiff did not include wages included on those applications in its calculation of qualified wages in its claims for the ERC.

20. Plaintiff did not include the wages of any individual who directly or indirectly owns more than 50% of Plaintiff or any relatives or spouses of any individuals who directly or indirectly owns more than 50% of Plaintiff in its calculations to the ERC.

4

21. Plaintiff is not a party to any employee leasing arrangement and did not otherwise lease employees.

22. Plaintiff is not a part of an affiliated service group within the meaning contained in 26 U.S.C. § 414(m).

23. Plaintiff is not a member of a consolidated group of corporations and is not under common control with any other trades or businesses.

24. A major component of plaintiff's business during 2019, 2020 and 2021 involved multiple employees working closely together, including traveling in the same vehicle to customers' locations to perform work.

25. On March 10, 2020, Michigan's Governor Whitmer issued Executive Order 2020-4, which declared a state of emergency in Michigan due to COVID-19.

26. On March 23, 2020, Governor Whitmer issued Executive Order 2020-21, which directed residents to remain at home or in their place of residence to the maximum extent feasible. This Order went into effect as of 12:01am on March 24, 2020. Executive Order 2020-21 ordered that the "order must be construed broadly to prohibit in-person work that is not necessary to sustain human or protect life."

27. The Order required all individuals who left their home or place of residence to adhere to social distancing measures, including maintaining a minimum of six feet from people outside their household.

28. Further, the Order required: "No person or entity shall operate a business or conduct operations that require workers to leave their homes or places of residence except

to the extent that those workers are necessary to sustain or protect life or to conduct minimum basic operations."

29. The Order also mandated: "In-person activities that are not necessary to sustain or protect life must be suspended until normal operations resume."

30. Plaintiff did not provide services necessary to sustain or protect life.

31. Moreover, the Order stated: "Businesses and operations maintaining in-person activities must adopt social distancing practices and other mitigation measures to protect workers and patrons" including "[r]estricting the number of workers present on premises to no more than is strictly necessary to perform the business's or operation's critical infrastructure functions."

32. Executive Order 2020-21 was extended by Executive Order 2020-42.

33. On April 24, 2020, Governor Whitmer issued Executive Order 2020-59, which broadened the number of people who could return to work but still imposed the same social distancing requirements under the previous Executive Order that severely limited business operations such that Plaintiff was partially suspended.

34. On May 1, 2020, Governor Whitmer issued Executive Order 2020-70, which also allowed certain workers to return to work but again required social distancing such that Plaintiff could not operate his business at full force and was partially suspended.

35. Likewise, on May 7, 2020, Executive Order 2020-77 followed again requiring Plaintiff to institute social distancing at his workplace such that he could not operate at full force and was partially suspended.

36. Executive Order 2020-96 (as extended by Executive Order 2020-100), Executive Order 145, Executive Order 161, Executive Order 183 and others all placed significant limitations on the operations of Plaintiff's business that caused a partial shutdown of his business.

37. These government limitations which caused Plaintiff to be partially shut down were not removed until June 17, 2021, with the issuing of the Michigan Department of Health and Human Services "Rescission of Emergency Orders."

## COUNT I

Plaintiff Refund Claim on 941-X for Second Quarter 2020

38. On April 15, 2024, Plaintiff signed an amended IRS Form 941-X for the taxable period ending June 30, 2020, claiming a refund of tax and ERC in the amount of $43,793.67 plus interest. Attached hereto as **Exhibit B**.

39. The IRS Account Transcripts confirm the receipt on April 22, 2024, and reflects a forwarded for processing date of April 22, 2024. A true and correct copy of the Account Transcript for second quarter 2021 is attached hereto as **Exhibit C**.

40. More than six months have elapsed since the Plaintiff's claim was filed with the IRS.

41. There is currently no outstanding balance owed from the Plaintiff for second quarter 2020.

42. Plaintiff qualified as an eligible employer for this quarter under the Full or Partial Suspension Test.

43. Plaintiff paid qualifying wages of $87,587.34 second quarter 2020 and calculated an ERC of $43,793.67.

## COUNT II

Plaintiff Refund Claim on 941-X for Third Quarter 2020

44. On April 15, 2024, Plaintiff signed an amended IRS Form 941-X for the taxable period ending September 30, 2020, claiming a refund of tax and ERC in the amount of $25,703.31 plus interest. Attached hereto as **Exhibit D**.

45. The IRS Account Transcripts confirm the receipt on April 22, 2024, and reflects a forwarded for processing date of April 22, 2024. A true and accurate copy of the Account Transcript for third quarter 2020 is attached hereto as **Exhibit E**.

46. More than six months have elapsed since the Plaintiff's claim was filed with the IRS.

47. There is currently no outstanding balance owed from the Plaintiff for third quarter 2020.

48. Plaintiff qualified as an eligible employer for this quarter under the Full or Partial Suspension Test.

49. Plaintiff paid qualifying wages of $51,046.62 third quarter 2020 and calculated an ERC of $25,703.31.

## COUNT III

Plaintiff Refund Claim on 941-X for Fourth Quarter 2020

50. On April 15, 2024, Plaintiff signed an amended IRS Form 941-X for the taxable period ending December 31, 2020, claiming a refund of tax and ERC in the amount of $32,580.77 plus interest. Attached hereto as **Exhibit F**.

51. The IRS Account Transcripts confirms receipt on April 22, 2024, and reflects a forwarded for processing date of April 22, 2024. A true and correct copy of the Account Transcript for fourth quarter 2020 is attached hereto as **Exhibit G**.

52. More than six months have elapsed since the Plaintiff's claim was filed with the IRS.

53. The Account Transcript shows an outstanding balance for fourth quarter 2020.

54. Plaintiff qualified as an eligible employer for this quarter under the Full or Partial Suspension Test.

55. Plaintiff paid qualifying wages of $65,161.54 fourth quarter 2020 and calculated an ERC of $32,580.77 for fourth quarter 2020.

## COUNT IV

Plaintiff Refund Claim on 941-X for First Quarter 2021

56. On June 3, 2024, Plaintiff signed an amended IRS Form 941-X for the taxable period ending March 31, 2021, claiming a refund of tax and ERC in the amount of $49,958.96 plus interest. Attached hereto as **Exhibit H**.

57. The IRS Account Transcripts confirm the receipt on July 1, 2024, and reflect a forwarded for processing date of July 1, 2024. A true and correct copy of the Account Transcript for first quarter 2021 is attached hereto as **Exhibit I**.

58. More than six months have elapsed since the Plaintiff's claim was filed with the IRS.

59. There is currently no outstanding balance owed from Plaintiff for first quarter 2021.

60. Plaintiff qualified as an eligible employer for this quarter under the Full or Partial Suspension Test.

61. Plaintiff paid qualifying wages of $71,369.94 first quarter 2021 and calculated an ERC of $49,958.96 for first quarter 2021.

## COUNT V

Plaintiff Refund Claim on 941-X for Second Quarter 2021

62. On June 3, 2024, Plaintiff signed an amended IRS Form 941-X for the taxable period ending June 30, 2021, claiming a refund of tax and ERC in the amount of $75,105.23 plus interest. Attached hereto as **Exhibit J**.

63. The IRS Account Transcripts confirm the receipt on July 1, 2024, and reflect a forwarded for processing date of July 1, 2024. A true and accurate copy of the Account Transcript for second quarter 2021 is attached hereto as **Exhibit K**.

64. More than six months have passed since the Plaintiff's claim was filed with the IRS.

65. The Account Transcript shows an outstanding balance for second quarter 2021.

66. Plaintiff qualified as an eligible employer for this quarter under the Full or Partial Suspension Test.

67. Plaintiff paid qualifying wages of $107,293.19 second quarter 2021 and calculated an ERC of $75,105.23 for second quarter 2021.

WHEREFORE, Plaintiff prays that this Honorable Court award judgment in favor of Plaintiff and against Defendant in the amount of $227,141.94 plus interest, costs and attorney fees, and grant any further relief this Court may find appropriate.

Respectfully submitted,

/s/ Timothy R. West

Timothy R. West
DV INJURY LAW WEST, PC
3111 Camino Del Rio N, Suite 400
San Diego, CA 92108
Phone: 619-202-0004
Fax: 619-378-1030
Email: timw@dvinjurylaw.com